UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
MSP RECOVERY CLAIMS SERIES 44, LLC,)
                               )        CIVIL ACTION
                Plaintiff,     )        No. 22-11681-WGY
                               )
        v.                     )
                               )
BUNKER HILL INSURANCE COMPANY and )
PLYMOUTH ROCK HOME ASSURANCE   )
CORPORATION,                   )
                               )
                Defendants.    )
_____)
```

YOUNG, D.J.                                    July 25, 2023

**MEMORANDUM & ORDER**

## I.   INTRODUCTION

The plaintiff, MSP Recovery Claims Series 44, LLC ("MSPRC 44"), a Delaware entity, on behalf of its Designated Series, brings this action against the defendants Bunker Hill Insurance Company ("Bunker Hill") and Plymouth Rock Home Assurance Corporation (collectively "Bunker Hill")[1] and asserts two causes of action.  MSPRC 44's claims in this lawsuit stem from its

---

[1] "According to the Commonwealth of Massachusetts Corporations Division website, 'Bunker Hill Insurance Company' changed its name to Plymouth Rock Home Assurance Corporation on August 5, 2020. Moreover, also according to the Division of Corporations, on August 12, 2020, Bunker Hill Security Insurance Company changed its name to Bunker Hill Insurance Company. As such, both entities have been named as defendants in the instant Complaint [since] 'Bunker Hill Insurance Company' [was named] pursuant to the MSP Act."  Pl.'s Compl. ("Compl.") 6 n.2, ECF No. 1.  The Defendants will be solely referred to as Bunker Hill in the present Memorandum & Order.

assignment agreement with Blue Cross & Blue Shield of Massachusetts ("BCBSMA"), a Medicare Advantage Organization ("MAO").

Count I asserts a Private Cause of Action under 42 U.S.C. § 1395y(b)(3)(A) "to recover double damages from Bunker Hill for its failure to make appropriate and timely reimbursement of conditional payments [to BCBSMA] for beneficiaries' accident-related medical expenses."  Pl.'s Compl. ("Compl.") ¶ 64, ECF No. 1.

Count II seeks Declaratory Relief pursuant to 28 U.S.C. § 2201, requesting "an accounting of all instances where [Bunker Hill or Plymouth] settled a tort claim under a third-party insurance policy or accepted coverage under a first party insurance policy."  Id. ¶ 82.  The requested accounting, at a minimum, should entail the disclosure of "the identity of each claimant for whose benefit BCBSMA provided or paid for items or services."  Id.

**A. Procedural History**

MSPRC 44 commenced this action on October 3, 2022.  Compl. Bunker Hill moved to dismiss on January 31, 2023 and amended its Memorandum in Support of the Motion on February 1, 2023.  Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 14, and Mem. Law for

Defs.' Mot. Dismiss ("Defs.' Mem."), ECF No. 18.  MSPRC 44 filed an opposition to the motion to dismiss on February 20, 2023. Pl.'s Mem. Opp'n to Defs.' Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 21.  Bunker Hill has not filed a reply.  On March 28, 2023, the Court heard oral argument.  It granted the motion to dismiss count II, the count seeking broad declaratory relief, and took under advisement the motion to dismiss count I as to the appropriate statute of limitations.  See Clerk's Notes, ECF No. 29.

## B.  Statutory Framework

Medicare initially acted as the primary payer of health costs for its beneficiaries.  But in 1980 Congress enacted the Medicare Secondary Payer Act ("MSPA") to "counteract escalating healthcare costs," Bio-Medical Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund, 656 F.3d 277, 281 (6th Cir. 2011), making Medicare a secondary payer and prohibiting it from making a payment if "payment has been made or can reasonably be expected to be made" by a primary payer. 42 U.S.C. § 1395y(b)(2)(A)(ii).  If the primary payer "has not made or cannot reasonably be expected to make payment," Medicare is permitted to make a "conditional payment."  Id. § 1395y(b)(2)(B)(i).  If such a conditional payment is made, the

primary payer then reimburses Medicare. Id. §
1395y(b)(2)(B)(ii).

"In 1986, in an effort to 'encourage private parties to
bring actions to enforce Medicare's rights' under the MSPA and
thereby reduce instances of primary payers failing to cover
costs or to reimburse [the Center for Medicare Services
("CMS")], Congress created the MSPA's private cause of
action." MSP Recovery Claims, Series LLC & Series 17-04-631 v.
Plymouth Rock Assurance Corp., Inc., 404 F. Supp. 3d 470, 476
(D. Mass. 2019) (Burroughs, J.) (citing United Seniors Ass'n v.
Philip Morris USA, 500 F.3d 19, 22 (1st Cir. 2007)).

Although most beneficiaries still receive benefits directly
from Medicare, "individuals can elect instead to receive their
benefits through private insurance companies that contract with
[Medicare] to provide 'Medicare Advantage' . . . plans." In re
Avandia Mktg., Sales Practices & Prods. Liab. Litig., 685 F.3d
353, 355 (3d Cir. 2012). These private insurance companies are
referred to as MAOs. See MSP Recovery Claims, Series LLC v.
Nationwide Mut. Ins. Co., 594 F. Supp. 3d 947, 949–50 (S.D. Ohio
2022). "Instead of being paid on a fee-for-service basis, MAOs
receive a fixed payment per beneficiary-enrollee." Id. at 950
(citing 42 U.S.C. §§ 1395w-21, 1395w-23). "Like Medicare, an
MAO is also authorized to charge primary payers for medical
expenses the MAO pays on behalf of a beneficiary when the MAO is

a secondary payer and an insurance carrier, employer, or other entity is obligated to pay as a primary payer." Id. (citing 42 U.S.C. § 1395w-22(a)(4)).

"[G]roup health plans, workers' compensation plans, and no-fault and liability insurers . . . submit information regarding Medicare beneficiaries' claims on a quarterly basis. See 42 U.S.C. § 1395y(b)(7)-(8)." Id. at 956. This is commonly referred to as "Section 111 Reporting." Id. This information "must be reported 'regardless of whether or not there is a determination or admission of liability.' 42 U.S.C. § 1395y(b)(8)(C); but see 42 U.S.C. § 1395y(b)(8)(A) ('[A]n applicable plan shall—(i) determine whether a claimant . . . is entitled to benefits under the program . . . and (ii) if the claimant is determined to be so entitled, submit [the required information] to the Secretary . . . .')." Id.

**C. Factual Allegations**

The following facts are drawn from the complaint, the well-pleaded allegations of which are taken as true for the purposes of evaluating the motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citing A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013)).

**1.   Bunker Hill's Duties to Medicare and MAOs**

Bunker Hill is a "property and casualty insurer" which collects "premiums in exchange for taking on the risk that their insureds will be injured" for which they will be "contractually obligated to pay for their insured's accident-related medical care." Compl. ¶ 5. MSP alleges that Bunker Hill falls "within the [MSPA's] definition of a 'primary plan,' which includes 'an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance.' 42 U.S.C. § 1395y(b)(2)(A)," and further that "[a]s a primary plan, [Bunker Hill is] charged with two duties under the [MSPA]: (1) to notify the secondary payer (whether it be Medicare or an MAO) of [Bunker Hill's] primary payer status, and (2) to repay the secondary payer within 60 days. 42 U.S.C. §§ 1395y(b)(2)(B)(ii), 1395w-22(a)(4)." Id. ¶ 6.

### 2. Standing Allegations

Noncompliance with the MSPA may be uncovered through data analytics which "requires cross-referencing unreimbursed, accident-related conditional payments in listed assignors' claims data with instances where insurers reported to CMS under Section 111 that they were responsible for the accidents." Id. ¶ 24. MSPRC 44 alleges that these Section 111 reports make insurers such as Bunker Hill "primary payers under the [MSPA] as matter of law." Id. MSPRC 44 doesn't have direct access to

these Section 111 reports but is able to obtain the reports through a subscription service with CMS which provides copies of the reports that primary payers make to CMS.  Id.  The result is that the "only way to fully identify all secondary payments that auto insurers failed to reimburse is by comparing an MAO's and an auto insurer's claims data."  Id. ¶ 25.

MSPRC 44 and BCBSMA have an assignment agreement dating from December 18, 2018, wherein "BCBSMA irrevocably assigned to MSP Recovery, LLC any and all of its rights to recover payments made on behalf of its Enrollees."  Id. ¶ 28.  "On April 10, 2019, MSP Recovery, LLC assigned the rights it had acquired in the BCBSMA Assignment to Series 15-11-388, a designated series of MSP Recovery Claims, Series LLC ('Series Assignment')."  Id. ¶ 30.  "Further, on October 22, 2020, Series 15-11-388 entered into an assignment agreement with Series 44-20-388, a designated series of Series 44, whereby it irrevocably assigned all rights it acquired through its assignment agreement with MSP Recovery, LLC."  Id. ¶ 31.  MSPRC 44 now "seeks recovery for claims BCBSMA has assigned to MSPRC 44 through its Designated Series (Series 44-20-388)."  Id. ¶ 35.

MSP sets forth one representative beneficiary, "L.P.", who was enrolled in a Medicare Advantage Plan issued by BCBSMA.  Id. ¶ 39.  L.P. was involved in an accident that occurred on

December 14, 2017, and sustained injuries that required medical
items and services as a direct and proximate result of the
accident.  Id. ¶ 40.  Those medical services were allegedly
rendered on December 14, 15, and 29, 2017.  Id. ¶ 43.  "The
medical providers billed and charged BCBSMA $4,714.12 for L.P.'s
accident-related medical expenses, of which BCBSMA paid
$1,428.05".  Id.  L.P brought a claim against Bunker Hill's
insured and Bunker Hill "indemnified their insured tortfeasor
and made payments pursuant to a settlement with L.P."  Id. ¶ 44.

MSPRC 44 contends -- and this is the core issue with regard
to standing -- that "[b]y virtue of entering into that
settlement and obtaining a release of all claims, [Bunker Hill]
became a primary payer responsible for payment and/or
reimbursement of L.P.'s accident-related medical expenses."  Id.
Particularly, MSPRC 44 claims that through the Section 111
report that Bunker Hill made to CMS which included "the
accident, the name of the reporting entity, and the type of
insurance policy involved," Bunker Hill admitted their primary
payer status with regard to the "payment and/or reimbursement of
L.P.'s accident-related medical expenses," as well as their
knowledge of the responsibility to reimburse BCBSMA.  Id. ¶¶
45-46.  MSPRC 44 alleges that Bunker Hill failed to remit or
reimburse CMS despite admitting primary plan responsibility and
demonstrating knowledge that it should have made the required

payment.  Id. ¶ 47.  MSPRC 44 seeks to recover double damages
against Bunker Hill for their failure to reimburse the
conditional payment made by BCBSMA for L.P.'s accident-related
medical expenses.  Id. ¶ 51.

## II.  Legal Standard

When evaluating a motion to dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(1) at the pleading stage, granting
such a motion "is appropriate only when the facts alleged in the
complaint, taken as true, do not justify the exercise of subject
matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d
8, 11 (1st Cir. 2003).  "When a district court considers a Rule
12(b)(1) motion, it must credit the plaintiff's well-pled
factual allegations and draw all reasonable inferences in the
plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54
(1st Cir. 2010).  "In addition, the court may consider whatever
evidence has been submitted, such as the depositions and
exhibits submitted in this case." Aversa v. United States, 99
F.3d 1200, 1210 (1st Cir. 1996).  "While the court generally may
not consider materials outside the pleadings on a Rule
12(b)(6) motion, it may consider such materials on a Rule
12(b)(1) motion." Gonzalez v. United States, 284 F.3d 281, 288
(1st Cir. 2002), as corrected (May 8, 2002).  To withstand a
motion to dismiss under Rule 12(b)(6), a complaint must allege a

claim for relief that is "plausible on its face." Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167
L. Ed. 2d 929 (2007). Assessing the plausibility of a claim is
a two-step process: "First, the court must sift through the
averments in the complaint, separating conclusory legal
allegations (which may be disregarded) from allegations of fact
(which must be credited). Second, the court must consider
whether the winnowed residue of factual allegations gives rise
to a plausible claim to relief." Rodriguez-Reyes v. Molina-
Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted).
Along with all well-pleaded facts, the court must draw all
logical inferences from a complaint in favor of the
plaintiff. Frappier v. Countrywide Home Loans, Inc., 750 F.3d
91, 96 (1st Cir. 2014). "If the factual allegations in the
complaint are too meager, vague, or conclusory to remove the
possibility of relief from the realm of mere conjecture, the
complaint is open to dismissal." Rodriguez-Reyes, 711 F.3d at
53 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir.
2010) (en banc)).

    "When a court is confronted with motions to dismiss under
both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide
the former before broaching the latter," because "if the court
lacks subject matter jurisdiction, assessment of the merits

becomes a matter of purely academic interest." <u>Deniz</u> v.
<u>Municipality of Guaynabo</u>, 285 F.3d 142, 149-50 (1st Cir. 2002).

## III. SUBJECT MATTER JURISDICTION

Bunker Hill initially moved to dismiss the action for lack
of subject matter jurisdiction. It has four main arguments.  Its
first argument, an Article III standing challenge, asserted
MSPRC 44, an assignee of a Medicare Advantage ("MA") Plan's MSP
Act recovery rights, lacks statutory standing to sue under 42
U.S.C. § 1395y(b)(3)(A).  Defs.' Mem. 5-7.  Bunker Hill also
asserted that even if such rights were actionable, they were not
assignable to MSPRC 44. <u>Id.</u> 7-10. Finally, Bunker Hill argued
MSPRC 44 has not sufficiently alleged that the assignor BCBSMA
properly assigned the representative L.P. claim. <u>Id.</u> 10-11.

Relying on a thorough decision made by my colleague, Judge
Burroughs, <u>see</u> <u>Plymouth Rock</u>, 404 F. Supp. 3d at 478, involving
the same constitutional challenge and the same parties, and
decisions on those issues by sister circuits, this Court does
not consider any of these arguments meritorious.  Specifically,
this Court is satisfied that Medicare Advantage Organizations
have standing, <u>see</u> <u>In re Avandia Mktg.</u>, 685 F.3d at 364-65, <u>see</u>
<u>also</u> <u>Plymouth Rock</u>, 404 F. Supp. 3d at 481, that the purported
assignment relied upon by MSPRC 44 is not facially invalid, <u>see</u>

id. at 479, that MSPRC 44 is a proper party to bring suit, see MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co., 974 F.3d 1305, 1320 (11th Cir. 2020), Plymouth Rock, 404 F. Supp. 3d at 480, that the L.P. claim is assignable, see MSP Recovery, LLC v. Allstate Ins. Co., 835 F.3d 1351, 1358 (11th Cir. 2016), MSP Recovery Claims, Series LLC v. QBE Holdings, Inc., 965 F.3d 1210, 1217 (11th Cir. 2020), and that the complaint demonstrated enough facts to support that L.P.'s claim was assigned. See MSP Recovery Claims, Series LLC v. AIX Specialty Ins. Co., No. 6:18-CV-1456-ORL-40DCI, 2019 WL 2211092, at *3 (M.D. Fla. May 22, 2019).!

Bunker Hill's final argument asserted that MSPRC 44 failed to allege an injury-in-fact. Although in its motion, the lack of injury-in-fact argument was unconvincing as it was based on the assigned nature of the unreimbursed payment, Defs'. Mem. 13-14, Bunker Hill now revives this argument on a different basis through a Notice of Supplemental Authorities ("Supplemental Auth."), ECF No. 30.

Bunker Hill argues that MSPRC 44 lacks standing as "[the] Section 111 reporting does not provide standing to Plaintiff as a matter of plain language statutory interpretation, mandating dismissal," by setting forth a recent decision of the Second Circuit, MSP Recovery Claims, Series LLC v. Hereford Ins. Co.,

66 F.4th 77, 89 (2d Cir. 2023) followed in this District by <u>MSP Recovery Claims Series 44, LLC</u> v. <u>Arbella Mut. Ins. Co.</u>, No. 22-CV-11310, 2023 WL 3481496 (D. Mass. May 16, 2023) (Zobel, J.) and <u>MSP Recovery Claims, Series LLC & MSP Recovery Claims Series 44, LLC</u> v. <u>Safeco Ins. Co. of Am., LM Gen. Ins. Co., & Liberty Mut. Ins. Co.</u>, No. 22-CV-10809, 2023 WL 3481586 (D. Mass. May 16, 2023) (Zobel, J.).  Supplemental Auth. 2.  Given the facts alleged here, this line of reasoning is inapplicable at the motion to dismiss stage.

Here's why:

### A.   Applicable Standard of Review

To satisfy the "irreducible constitutional minimum" of Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc</u>. v. <u>Robins</u>, --- U.S. ----, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing <u>Lujan</u> v. <u>Defs. of Wildlife</u>, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Warth</u> v. <u>Seldin</u>, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A plaintiff may, however, obtain standing to sue where it has received a valid assignment from a person who holds the rights to a claim. <u>See</u> <u>Sprint Commc'ns Co.</u> v. <u>APCC Servs., Inc.</u>, 554 U.S. 269, 285, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008) ("[T]here is a strong tradition specifically of suits by assignees for collection.... Lawsuits by assignees, including assignees for collection only, are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" (quoting <u>Vt. Agency</u> <u>of Nat. Res.</u> v. <u>United States ex rel. Stevens</u>,

529 U.S. 765, 777–78, 120 S.Ct. 1858, 146 L.Ed.2d 836
(2000))).

Plymouth Rock, 404 F. Supp. 3d at 478.

**B. Section 111 Reporting is Sufficient Here to Demonstrate an Injury-In-Fact When Considered With the Other Facts Alleged.**

The recent Second Circuit decision affirmed dismissal of a claim brought under the Medicare Secondary Payer Act for lack of standing because "the plain language of Section 111 tells us that when a no-fault insurance provider such as [Bunker Hill] reports a claim pursuant to Section 111, it does not thereby admit that it is liable for the claim." See Hereford Ins. Co., 66 F.4th at 89. Based on the Second Circuit's decision in Hereford Ins. Co., Bunker Hill asserts that "Section 111 reporting does not provide standing to Plaintiff as a matter of plain language statutory interpretation, mandating dismissal." Supplemental Auth. 2.

Bunker Hill's contention that its motion to dismiss be granted because standing relies solely on the Section 111 reporting is here wide of the mark. While the complaint here does refer to Section 111 reporting, this is only a part of the method the complaint alleges demonstrates knowledge and responsibility. "MSPRC 44 uncovers MSP Act noncompliance through data analytics, which requires cross-referencing unreimbursed, accident-related conditional payments in listed

assignors' claims data with instances where insurers reported to CMS under Section 111 that they were responsible for the accidents."  Compl. ¶ 24.

The contrast between simply claiming liability through a single Section 111 report, and a more robust analysis ("swinging up through the futtock shrouds" as I put it in Miles v. Cambs, 1:21-cv-11481 WGY, ECF No. 57.  Section 111 reporting and other information has been carefully addressed in MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co., 594 F. Supp. 3d 947, 956–57 (S.D. Ohio 2022).  "Section 111 reports, without more, may be insufficient to establish an insurer's status as the primary plan for a claim covered by an MAO."  Id.  What qualified as "more" in that case was the plaintiffs going beyond the Section 111 reporting, "listing either Defendants' no fault insurance policy that should have covered injuries a beneficiary received in an accident or Defendants' liability insurance policy that, per a settlement agreement, should have covered injuries a beneficiary received," and the detail of the "medical treatment that should have been covered under the applicable insurance policy but that was instead covered by the MAO."  Id. at 957.  All the information to which reference is made in that case is present in MSPRC 44's complaint here.  The complaint includes the following information: "L.P. was injured in an accident. As a direct and proximate result of the accident, L.P.

15

sustained injuries that required medical items and services."
Compl. ¶ 40.  "Defendants' insured responsible for the incident
was insured under policy numbers 352701322727 and
BHH00001059739."  Id. ¶ 41.  "Following L.P.'s claim against
Defendants' insured, Defendants indemnified their insured
tortfeasor and made payments pursuant to a settlement with L.P."
Id. ¶ 44.

The Court in Nationwide Mut. Ins. Co., in possession of the
same factual allegations as provided here, ruled that: "For each
exemplar, Plaintiffs have alleged enough to make it more than a
sheer possibility that Defendants are primary plans.  It is not
as though they have merely stated that Defendants made a Section
111 report about a claim and therefore, they are the primary
plan — and, more importantly, the primary payer."  594 F. Supp.
3d. at 957.

This Court agrees.  When construed together, the reporting
and the accompanying facts state a plausible claim.

Therefore, construing the complaint in the light most
favorable to MSPRC 44, as this Court must at this stage, MSPRC
44 has plausibly alleged that Bunker Hill is a primary plan
responsible for reimbursement to BCBSMA.  The renewed motion to
dismiss arguing lack of injury in fact is **DENIED**.

## IV.  STATUTE OF LIMITATIONS

Bunker Hill argues that the exemplar claim is time-barred. Defs.' Mem. 11-13.  MSPRC 44 disagrees.  Pl.'s Opp'n 17-19. This Court must first determine what statute of limitations applies to this claim brought under the MSPA private right of action, and then determine whether that statute of limitations bars MSPRC 44's exemplar claim.

## A. The Appropriate Statute of Limitations

The Medicare Secondary Payer Act is silent as to the limitations period for private causes of action, see 42 U.S.C. § 1395y(b)(3)(A), although it has a three-year statute of limitations for actions brought by the United States to recover conditional payments.  See 42 U.S.C. § 1395y(b)(2)(B)(iii). There is no controlling authority in the First Circuit and there would appear to be a plethora of statutory sources from which to borrow.  When "there is no federal statute of limitations expressly applicable" to a lawsuit, courts typically "borrow" the most suitable statute or other rule of timeliness from some other source.  DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158, 76 L. Ed. 2d 476 (1983).

Most courts have borrowed the three-year statute of limitations applicable to the government's cause of action and applied it to the private cause of action as well.  See MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co., No.

17

2:21-CV-1901, 2022 WL 3572439, at *4 (S.D. Ohio July 25, 2022);
MAO-MSO Recovery II, LLC v. Farmers Ins. Exch., No. 2:17-CV-
02522-CAS-PLAx, 2022 WL 1690151, at *11 (C.D. Cal. May 25,
2022); MSP Recovery Claims, Series LLC v. AIX Specialty Ins.
Co., No. 6:18-CV-1456-ORL-40DCI, 2019 WL 2211092, at *4 (M.D.
Fla. May 22, 2019); MSPA Claims 1, LLC v. Bayfront HMA Med.
Ctr., LLC, No. 17-CV-21733, 2018 WL 1400465, at *6 (S.D. Fla.
Mar. 20, 2018); Collins v. Wellcare Healthcare Plans, Inc., 73
F. Supp. 3d 653, 671 (E.D. La. 2014).

Other courts have borrowed from the False Claims Act's six-
year period.  See Manning v. Utils. Mut. Ins. Co., 254 F.3d 387,
394-95, 398 (2d Cir. 2001); see also United States v. Stricker,
524 F. App'x 500, 505-06 & n.6 (11th Cir. 2013).

Before borrowing from another statute, however, a court
must first consider whether a federal statute of limitations
applies, a point the Eleventh Circuit made in a recent decision.
See MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co., 43 F.4th
1259, 1263 (11th Cir. 2022).

The Court in Tower Hill determined in fact that there was
an applicable statutory period provided by Congress, id. at
1263-64, and applied 28 U.S.C. § 1658, which provides: "[e]xcept
as otherwise provided by law, a civil action arising under an
Act of Congress enacted after [December 1, 1990] may not be

commenced later than 4 years after the cause of action accrues." The Eleventh Circuit therefore determined section 1658(a)'s catch-all provision applied to the private cause of action brought by MAO's.  Tower Hill, 43 F.4th at 1264-65.  This Court concurs with the Eleventh Circuit's determination.

While The Medicare Secondary Payer Act's private cause of action in 42 U.S.C. § 1395y(b)(3)(A) was enacted in 1986, before Section 1658 was enacted, "Medicare Part C -- which created MAO's and granted them a statutory right to seek reimbursable fees, thereby empowering them to sue under the private cause of action -- wasn't enacted until 1997."  Id. at 1264 (citing Humana Med. Plan, Inc. v. W. Heritage Ins. Co., 832 F.3d 1229, 1235 (11th Cir. 2016)); see also Plymouth Rock, 404 F. Supp. 3d at 480 (holding that an MAO may bring suit under the MSPA). Therefore, because MSPRC 44's cause of action (assigned to it by an MAO) was created by Medicare Part C after 1990, section 1658(a) is the applicable statute of limitations to apply.  See Tower Hill, 43 F.4th at 1264 (citing Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382, 158 L. Ed. 2d 645 (2004)).

Tower Hill further provides that "it's only '[b]ecause' of that statutory right that an 'MAO suffers an injury when a primary plan fails to reimburse it.'"  Id. (quoting MSPA Claims

1, LLC v. Kingsway Amigo Ins. Co., 950 F.3d 764, 771 (11th Cir.
2020)).

This Court agrees with the Eleventh Circuit that without
Medicare Part C, an MAO like BCBSMA would not "(1) exist, (2)
have a statutory right to charge a primary payer, or (3) suffer
any cognizable injury if the primary payer didn't reimburse it."
Id. at 1265.

Consequently, this Court holds that 28 U.S.C. § 1658(a)
provides the applicable statute of limitations for MAO's to
bring a private cause of action under the MSP Act.  MAO's and
their assignees thus have a four-year limitation to their
claims.

### B. Does the Four-Year Statute of Limitations Bar the Plaintiff's Claim Here?

Bunker Hill argues that even if the four-year statute
pursuant to section 1658 applies, MSPRC 44's exemplar claim is
outside that timeline.  See Defs.' Mem. 12.  Bunker Hill
supports its argument with the same Tower Hill decision upon
which this court has just relied.  In Tower Hill, the Eleventh
Circuit held that the four-year statute of limitations' clock
starts running when the plaintiff's assignor (in this case
BCBSMA) pays the exemplar's (L.P.'s) claim and thus becomes

"entitled to reimbursement through the Medicare Secondary Payer Act."  43 F.4th at 1265-67.

      While this Court agrees with the Eleventh Circuit on which statute of limitations applies, it disagrees with its approach to determining when the action "accrues."  Section 1658(a) requires that a claim be brought no "later than 4 years after the cause of action <u>accrues</u>."  28 U.S.C. § 1658(a) (emphasis added).  The court in <u>Tower Hill</u> started its analysis by considering the dual approach that courts usually choose from to determine what tolls a statute of limitation, namely the "'occurrence rule' — [which] begins the limitations period on the date that the violation of the plaintiff's legal right occurred" and the "'discovery rule' — [which] commences the limitations period on the date the plaintiff discovered or should have discovered the cause of action."  43 F.4th at 1265 (citing <u>SCA Hygiene Prods. Aktiebolag</u> v. <u>First Quality Baby Prods., LLC</u>, 580 U.S. 328, 137(2017)).  It chose to adopt the occurrence rule.

> Because it is at least "plausible" that the term "accrues" in § 1658(a) incorporates an  occurrence rule – in fact, and setting presumptions aside, we think that's the best interpretation — that is how we interpret it. Therefore, [Plaintiff's] cause of action accrued in 2012 when [Plaintiff's] assignor, [the MAO], paid [the Exemplar's] medical bills and became entitled to reimbursement through the Medicare Secondary Payer Act. Because that was more than four

years before [Plaintiff] filed suit in 2018, its suit
is not timely under 28 U.S.C. § 1658(a).

Id. at 1267.

This Court disagrees with a rule that provides that the
cause of action accrues when the MAO pays the medical fees and
becomes entitled to reimbursement.  At that moment the MAO would
have no reason to know that it was entitled to any reimbursement
and that it had a claim against a responsible primary payer.

Under the government cause of action, the notice of the
settlement is what triggers the start of the claim.  "An action
may not be brought by the United States under this clause with
respect to payment owed unless the complaint is filed not later
than 3 years after the date of the receipt of notice of a
settlement, judgment, award, or other payment made pursuant to
paragraph (8) relating to such payment owed."  42 U.S.C. §
1395y(b)(2)(B)(iii).  See also MSP Recovery Claims, Series LLC
v. Plymouth Rock Assurance Corp., Inc., No. 18-CV-11702-ADB,
2023 WL 2633907, at *12 (D. Mass. Mar. 24, 2023) (Burroughs, J.)
("The plain language of § 1395y(b)(2)(B)(iii) makes clear that
the limitations period is triggered by notice of settlement.")

Under the private cause of action, the MSP Act requires
defendants to file a section 111 reporting to CMS: "[P]rimary
payers such as defendants are only required to electronically
notify the Centers for Medicare & Medicaid Services ("CMS") of

22

an [accident] and report the Medicare beneficiary's name, Medicare Health Insurance Claim Number, and additional identifying information." MSP Recovery Claims, Series LLC v. Farmers Ins. Exch., No. 2:17-CV-02522-CAS, 2019 WL 3500285, at *3 (C.D. Cal. Aug. 1, 2019) (citing 42 U.S.C. § 1395y(b)(7)(A)(ii)). Such reports are made "after the claim is resolved [by Defendants] through a settlement, judgment, award, or other payment (regardless of whether or not there is a determination or admission of liability)." 42 U.S.C. § 1395y(b)(8)(C). MAO's are not owed any type of notice under the private cause of action, so the only way they can be made aware that there exists a primary plan are the reports submitted to CMS that put them on notice. Allowing the "occurrence rule" that the Eleventh Circuit has adopted would encourage primary payers to delay reporting their claims to CMS, which would defeat the purpose of the Act itself, which is to allow Medicare to recover claims for which it conditionally paid, and for which it ultimately is not responsible.

This Court therefore holds that the statute of limitations starts running when primary payers report their status to CMS and the information becomes discoverable by MAO's.

Turning to the specific claim brought forth by MSPRC 44, Bunker Hill, based on the Eleventh Circuit's occurrence reasoning, argues that "[t]he date BCBSMA allegedly paid the

23

$1,428.05 medical bills for which Plaintiff seeks reimbursement occurred, at the latest, on January 26, 2018, meaning the limitations period accrued more than 4 years and 9 months before this lawsuit was filed in October 2022, well beyond the applicable statute of limitation."  Defs.' Mem. 12-13.  MSPRC 44 argues that "[t]he Complaint does not allege when Bunker Hill made payments to resolve L.P.'s claim."  Pl.'s Opp'n 19.  This is immaterial to the analysis.  The clock started when Bunker Hill rendered its Section 111 report and thus provided potential notice to the affected MAO.

In order to determine whether the claims are timely brought, this Court would need to know when the Section 111 reporting was complete.  From the face of the complaint, all that is clear is that Section 111 reporting was completed, but the date is not specified.  See Compl. ¶ 45.  Consequently, and as laid out in Nationwide Mut. Ins. Co., which adopted the statute of limitations that accrues upon notice, "[w]ithout knowing the dates settlements were reached, and without more information about when the Section 111 reporting was completed, the Court is unable to dismiss these claims as untimely based on the face of the Complaint."  Nationwide Mut. Ins. Co., 2022 WL 3572439, at *5.

As with their claim that MSPRC 44 have not suffered an injury-in-fact, Bunker Hill is free to re-raise this issue at

summary judgment.  The motion to dismiss for failure to state a claim is thus **DENIED**.

## V. CONCLUSION

At this stage of the proceedings, dismissal for lack of injury-in-fact and failure to state a claim would be premature. MSPRC 44's complaint alleges sufficient facts to support count I, which asserts a private cause of action under 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Bunker Hill for its failure to make appropriate and timely reimbursement of conditional payments to BCBSMA for beneficiaries' accident-related medical expenses.  The motions to dismiss count I, ECF No. 14, are **DENIED**.

**SO ORDERED.**

<u>/s/William G. Young</u>
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[2]

---

[2] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.